**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN DIVISION**

RECEIVED-CLERK
U.S. DISTRICT COURT

2005 FEB -8  P 1: 27

| | |
|---|---|
| GARY NOA, ELMER ARTHUR KALER, : <br> JOSEPH YANIAK, AND JULIA HOLDEN : <br> On behalf of themselves and all others : <br> similarly situated, : <br> : <br> Plaintiffs, : <br> : <br> vs. : <br> : <br> CRAIG D. KEYSER, JUDY FISHER, : <br> AND, JOHN DOES 1 - 10, : <br> : <br> Defendants. : | Civil Action No. $05 CV 776 (JEI)$ <br><br> **CLASS ACTION COMPLAINT <br> FOR VIOLATIONS OF THE <br> EMPLOYEE RETIREMENT <br> INCOME SECURITY ACT** <br><br> **JURY TRIAL DEMANDED** |

**I. NATURE OF THE ACTION**

1.     This action for breach of fiduciary duty concerns a 401(k) savings plan sponsored by Trump Taj Mahal Associates; Trump's Castle Associates, L.P.; Trump Plaza Associates; and Trump Indiana, Inc. (the "Trump Companies") -- The Trump Capital Accumulation Plan (the "Plan"). The Trump Companies are subsidiaries of Trump Hotel & Casinos Resorts, Inc. ("THCR"). Plaintiffs bring this action on behalf of the Plan, its participants, and beneficiaries pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), the federal statute that comprehensively regulates employee benefit plans, including those at issue in this case.

2.     Plaintiffs are current Trump Company employees who participate in the Plan and who have been injured by the Defendants' fiduciary breaches. Defendants are those individuals who are or were responsible for managing the Plan and/or their assets (the Plan's "fiduciaries"), including the members of the Plan Administrative Committee (the "Committee").

3.      Plaintiffs allege that the Defendants breached the fiduciary duties they owed to Plan participants and beneficiaries by selling THCR stock held in employee accounts without participants' authorization between November 15 and 17, 2004, at a time when the price of THCR stock was artificially depressed, due in part to Defendants' own actions. Specifically, the Defendants, as Plan fiduciaries and members of the Plan's Administrative Committee, improperly, and in violation of their fiduciary duties, publicly directed on October 28, 2004 that all THCR stock held by the Plan be sold between November 15 and 17, 2004.

4.      To remedy the injury to Plan participants' and beneficiaries' retirement security caused by the Defendants, Plaintiffs bring this action on behalf of themselves and other Plan participants and beneficiaries.  Plaintiffs seek to certify this suit as a class action, a procedural vehicle approved by ERISA in breach of fiduciary duty cases.  In particular, Plaintiffs seek to have the Court certify, as is alleged below, a class of participants and beneficiaries of the Plan (the "Class") who invested in THCR stock as a retirement investment option and held those shares on or after October 28, 2004.

5.      Plaintiffs seek, among other things, to have the breaching fiduciaries make Plaintiffs and other injured Plan participants and beneficiaries whole for the losses suffered as a result of the Defendants' fiduciary breaches.

## II. JURISDICTION AND VENUE

6.      **SUBJECT MATTER JURISDICTION.**  This is a civil enforcement action for a breach of fiduciary duty brought pursuant to ERISA § 502(a), 29 U.S.C. § 1132(a).  This Court has original, exclusive subject matter jurisdiction over this action pursuant to ERISA section 502(e)(1), 29 U.S.C. § 1132(e)(1).  In addition, this Court has subject matter jurisdiction pursuant

2

to the general federal jurisdictional statute for "civil actions arising under the . . . laws . . . of the United States." 28 U.S.C. § 1331.

7.    **PERSONAL JURISDICTION.** ERISA provides for nation-wide service of process. ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2). All of the Defendants are believed to be citizens of the United States and this Court therefore has personal jurisdiction over each of them. This Court also has personal jurisdiction over each of the Defendants pursuant to Fed. R. Civ. P. 4(k)(1)(A) because they would be subject to the jurisdiction of a court of general jurisdiction in the State of New Jersey.

8.    **VENUE.** Venue is properly laid in this judicial district pursuant to ERISA § 502(c)(2), 29 U.S.C. § 1132(e)(2), because the Plan was administered in this district, the fiduciary breaches for which relief is sought occurred in this district, and one or more of he Defendants may be found in this district. Venue is also properly laid in this district under 28 U.S.C. § 1391(b) & (c) because some of the Defendants reside here. THCR's principal executive offices are located in this district and THCR systematically and continuously conducts business in this judicial district.

### III. PARTIES

A.    **PLAINTIFFS**

9.    Plaintiff Gary Noa has been an employee of Trump Plaza Associates, for over 19 years, and had been a Plan participant at all relevant times. On October 28, 2004, he held 10,075 shares of THCR common stock in his Plan account.

10.    Plaintiff Elmer Arthur Kaler has been an employee of Trump Plaza Associates for over 20 years, and has been a Plan participant at all relevant times. On October 28, 2004, he held

3

8,300 shares of THCR common stock in his Plan account.

11. Plaintiff Joseph Yaniak has been a Trump Plaza Associates employee for over 20 years, and has been a Plan participant at all relevant times. On October 28, 2004, he held 11,359 shares of THCR common stock in his Plan account.

12. Plaintiff Julia Holden has been a Trump Plaza Associates employee for over 17 years, and has been a Plan participant at all relevant times. On October 28, 2004, she held 18,528 shares of THCR common stock in her Plan account.

13. All of the Plaintiffs' shares of THCR common stock were sold without their authorization between November 15 and 17, 2004, at aggregate prices of $.57/share.

**B. DEFENDANTS**

14. Defendant Craig D. Keyser is a fiduciary of the Plan within the meaning of ERISA. He is Executive Vice President of Human Resources and Administration of THCR, and is a duly authorized member of the Trump Capital Accumulation Plan Administrative Committee. As representative of the Administrative Committee, personally signed the Trump Capital Accumulation Plan Document, and the Plan's 2005 Form 11-K filed with the Securities Exchange Commission on June 24, 2004.

15. Defendant Judy Fisher is a fiduciary of the Plan within the meaning of ERISA. She signed the Plan's 2003 Form 5500 filed with the Department of Labor on July 26, 2004, in two capacities: as Plan Administrator, and as Representative of Trump Taj Mahal Associates, the Plan sponsor. She is Executive Director of Human Resources of THCR.

16. Defendants John/Jane Does 1 - 10 are natural persons or organizations that were designated by the THCR Board of Directors to perform fiduciary functions. They include all

4

other members of the Committee. The identities of these individuals is presently unknown to Plaintiffs; once their identities are ascertained, Plaintiffs will amend the Complaint to join them under their true names. Defendant Fisher refused to identify other members of the Committee when asked repeatedly by Plaintiffs prior to the instigation of this litigation, claiming that the Plan had no legal obligation to do so.

17.     The Trump Companies are Participating Employers of the Plan. Each of these entities owns and operates a hotel and casino in Atlantic City, New Jersey or Gary, Indiana. Trump Taj Mahal Associates is the Plan sponsor. THCR is the corporate parent of each of the Participating Employers and the Plan sponsor. It is based in Atlantic City, New Jersey. Each of these entities is a fiduciary of the Plan within the meaning of ERISA. They are not named as defendants because each of these entities is under Bankruptcy protection. Plaintiffs have filed Class Proofs of Claim in Bankruptcy Court with respect to these entities.

## IV. THE PLAN

### A.     THE NATURE OF THE PLAN

19.     The defined contribution employee benefit plan for Trump Company employees that is at issue in this action was established in 1989, and the current Amended and Restated Trump Capital Accumulation Plan has been effective since January 1, 2002.

20.     The Trump Companies established the Plan in order to provide a retirement benefit for its employees and their beneficiaries. The Plan is an "employee pension benefit plan," as defined by § 3(2)(A) of ERISA, 29 U.S.C. § 1002(2)(A), eligible individual account plan within the meaning of ERISA § 407(d)(3), 29 U.S.C. § 1107(d)(3), and qualified cash or deferred arrangement within the meaning of section 401(k) of the Internal Revenue Code, 26 U.S.C. §

401(k). Although certain ERISA plans may be designed to invest primarily in employer securities pursuant to ERISA § 407(d)(6), 29 U.S.C. § 1107(d)(6), the Plan at issue in this case were not designed in that manner.

21.     The Plan is a legal entity which can sue or be sued.  ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).  However, in a breach of fiduciary duty action such as this one, the Plan is neither a plaintiff nor a defendant.  Rather, pursuant to ERISA § 1109, and the case law interpreting it, the relief requested in this action is for the benefit of the Plan, and its participants/beneficiaries.

**B.     PLAN DOCUMENTATION**

22.     **THE PLAN DOCUMENTS AND OPERATION OF THE PLAN.**  ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) provides that a plan must be established and maintained pursuant to a written instrument.  The written instrument at issue in this case is entitled the "The Trump Capital Accumulation Plan" (the "Plan Document").

23.     At all relevant times, participants were able to choose to contribute a percentage of their wages, bonuses, tips, overtime and vacation pay to the Plan.  As initially conceived, eligible Plan participants could invest in several different funds.

24.     In 1996, the Plan was amended.  As a result of the change, eligible employees could purchase THCR stock within the Plan as well as shares in funds, an option many employees chose to pursue.

25.     The most recent Amendment of the Plan has been effective since January 1, 2002.

26.     **TRUST AGREEMENT.**  ERISA requires that the assets of an employee benefit pension plan be held in trust.  ERISA § 403, 29 U.S.C. § 1103.  In this case at all relevant times,

6

Plan assets were held in trust by Merrill Lynch Trust Company (the "Trustee"). Under the terms

of the Plan Documents, the contributions to the Plan, by and on behalf of the participants, are

held in trust by the Trustee and invested by the Trustee in the investment options offered by the

Plan.

27.    **THE ROLE OF THE ADMINISTRATIVE COMMITTEE.** The Plan Document §13.1,

mandates the creation of a Plan Administrative Committee, all of whose members are appointed

by the Plan Sponsor, Trump Taj Mahal Associates. The Plan Document describes the role of the

Committee as follows:

> **SECTION 13.3. DUTIES AND POWERS**
>
> The Administrative Committee shall have complete control of
> administering the Plan, with all powers necessary to enable it to
> carry out its duties in that respect. In exercising its discretion, the
> Administrative Committee shall do so in a uniform and
> nondiscriminatory manner, treating all persons in similar
> circumstances alike. Not in limitation, but in amplification of the
> foregoing:
>
> (a)    The Administrative Committee shall have complete
>        authority to determine any question regarding an
>        Employee's participation and benefits, to interpret
>        and construe in its sole discretion the provisions of
>        the Plan, and to make decisions in all disputes
>        involving the rights of any person interested in the
>        Plan.
>
> (b)    The Administrative Committee shall file such
>        reports and Plan descriptions with the Department
>        of Labor and the Department of the Treasury as may
>        be required by law.
>
> (c)    The Administrative Committee shall notify the
>        Internal Revenue Service of the termination of this
>        Plan, any change in the name of the Plan or the
>        name and address of the Administrative Committee,

7

and any merger or division of this Plan.

(d)     The Administrative Committee shall provide each
        Participant and current Beneficiary with a summary
        of the latest annual report of the Plan and summary
        Plan descriptions in the form and within the time
        limits as may be required by law.

(e)     The Administrative Committee shall furnish
        statements of vested benefits to each Participants or
        current Beneficiary in the form and within the time
        limits as may be required by law.

(f)     The Administrative Committee shall make available
        to each Participant and Beneficiary during normal
        business hours at its principal office copies of this
        Plan and the Trust Agreement, the summary Plan
        description, the latest annual report, and any other
        documents pertaining to the establishment and
        operation of this Plan.  Upon request, such
        individual shall be furnished copies of any such
        documents, provided that he shall be required to pay
        any reasonable expense incurred in duplicating such
        documents.

Plan Document, § 13.3.

28.     The Committee Members also had particular fiduciary duties with respect to

Employer Stock purchases:

SECTION 14.4.  EMPLOYER STOCK

...

(b)     Fiduciary Duty of Administrative Committee: The
        Administrative Committee shall monitor the
        suitability of acquiring and holding Employer Stock
        under the fiduciary duty rules of Section 404(a)(1)
        of ERISA (as modified by Section 404(a)(2) of
        ERISA).

(c)     Purchases and Sales of Employer Stock: Purchases
        and Sales of Employer Stock shall be made on the

8

open market, provided that: (I) if the Trustee is unable to purchase or sell the total number of shares required to be purchased or sold on such day as a result of market conditions, or (ii) if the Trustee is prohibited by the Securities and Exchange Commission, the primary exchange on which the Employer Stock is traded, or any other regulatory body from purchasing or selling any or all of the shares required to be purchased or sold on such day; then the Trustee shall purchase or sell such shares as soon as administratively possible thereafter. The Trustee may follow directions from the Administrative Committee to deviate from the above purchase and sale procedures provided that such direction is made in writing by the Administrative Committee.

(d)   Execution of Purchases, Sales and Exchanges: Purchases, sales and exchanges of Employer Stock shall be made on the date on which the Trustee receives from the Administrative Committee, or its agent, in good order all information, documentation, and wire transfers of funds (if applicable) necessary to accurately effect such transactions. The Trustee may follow directions from the Administrative Committee to deviate from the above purchase, sale and exchange procedures provided that such direction is made in writing by the Administrative Committee.

Plan Document, § 14.4(b) - (d).

29.   SUMMARY PLAN DESCRIPTION. ERISA requires that a plan sponsor prepare and deliver to participants a Summary Plan Description ("SPD") containing basic information about a plan. The SPD must be "written in a manner calculated to be understood by the average plan participant, and should be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." ERISA § 102(a), 29 U.S.C. § 1022(a). The current Summary Plan Description has been effective since January 1,

9

2002. Nothing in the Summary Plan Description warned or disclosed to Plan participants that the Plan could take away from them the ability to decide whether and when to sell their THCR shares.

30.     **SUMMARY OF MATERIAL MODIFICATIONS.** ERISA also requires that any material modification of a plan must be documented in a Summary of Material Modifications ("SMM"). ERISA § 102(a), 29 U.S.C. § 1022(a). Like an SPD, an SMM must be understood by the average plan participant and be delivered to participants.

### V. ERISA'S CIVIL ENFORCEMENT PROVISIONS

31.     Plaintiffs seek relief for breach of fiduciary duty under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), against all Defendants. ERISA § 502(a)(2) authorizes a plan participant to bring a civil action for appropriate relief under ERISA § 409, 29 U.S.C. § 1109. ERISA § 409 requires "any person who is a fiduciary who breaches any of the duties imposed upon fiduciaries to make good to such plan any losses to the plan." ERISA § 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate."

32.     Plaintiffs also seek relief, as an additional basis of liability, under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which authorizes a plan participant to bring a civil action for breach of fiduciary duty against fiduciaries and certain non-fiduciaries for appropriate equitable relief.

### VI. DEFENDANTS' FIDUCIARY STATUS

33.     ERISA requires every plan to provide for one or more named fiduciaries who will have "authority to control and manage the operation and administration of the plan." ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1).

34.     The Committee Members are fiduciaries of the Plan pursuant to ERISA §

3(21)(A)(I), 29 U.S.C. § 1002(21)(A)(I), in that they exercised discretionary authority and control

respecting the administration and management of the Plan and the disposition of their assets.

The Defendants each exercised responsibility and took specific acts on behalf of the Plan in their

supervisory capacities as officers and directors of the Company with responsibility for overseeing

the Plan. The Administrative Committee is listed as a "named fiduciary" in the Plan Document,

§ 15.1.

35.     ERISA treats as fiduciaries not only persons explicitly named as fiduciaries under

§ 402(a)(1), but also any other persons who act in fact as fiduciaries, i.e., performed fiduciary

functions. Section 3(21)(A)(I) of ERISA, 29 U.S.C. §1002(21)(A)(I), provides that a person is a

fiduciary "to the extent . . . he exercises any discretionary authority or discretionary control

respecting management of such plan or exercises any authority or control respecting management

of disposition of its assets . . . ." During the Class Period, the defendants, including the John Doe

defendants, performed fiduciary functions under this standard, and thereby also acted as

fiduciaries under ERISA.

36.     The Defendants had discretionary authority with respect to the management of the

Plan and/or the management or disposition of the Plan's assets, and in particular, with respect to

the sales of THCR common stock at issue in this case. During the Class Period, all of the

Defendants acted as fiduciaries of the Plan pursuant to § 3(21)(A) of ERISA, 29 U.S.C. §

1002(21)(A), and the law interpreting that section.

## VII. FIDUCIARY DUTIES UNDER ERISA

37.     **The Statutory Requirements.** ERISA imposes strict fiduciary duties upon plan

11

fiduciaries.  ERISA § 404(a), 29 U.S.C. § 1104(a), states, in relevant part, that:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
>> (A) for the exclusive purpose of:
>>
>>> (I) providing benefit to participants and their beneficiaries; and
>>>
>>> (ii) defraying reasonable expenses of administering the plan;
>>
>> (B)   with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims;
>>
>> (C)   by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so;
>>
>> (D)   and in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this title. . . .

38.     **The Duty of Prudence.**  ERISA § 404(a)(1)(B) also imposes on a plan fiduciary the duty of prudence -- that is, the duty "to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims . . . ."

39.     **Co-Fiduciary Liability.**  A fiduciary is liable not only for fiduciary breaches within the sphere of his own responsibility, but also as a co-fiduciary in certain circumstances.  ERISA § 405(a), 29 U.S.C. § 1105(a), states, in relevant part, that:

In addition to any liability which he may have under any other provision of this part, a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:

(1)      if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; or

(2)      if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or

(3)      if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

40.     **Non-Fiduciary Liability.** Non-fiduciaries who knowingly participate in a

fiduciary breach may themselves be liable for certain relief under ERISA § 502(a)(3), 29 U.S.C.

§ 1332(a)(3).

## VIII. DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES

41.     THCR common stock was listed on the New York Stock Exchange from 1996,

when the stock was first made available to employees through the Plan, until August 10, 2004

(the "Employer"). At all times until August, 2004 (except for brief blackout periods), Plan

participants were permitted to buy or sell THCR shares for their own accounts. The Summary

Plan Description states that a commission of ten cents per share is charged for all transactions

involving THCR common stock. Participants could not invest their retirement funds in any other

individual stock. Between 1996 and August, 2004, employees were encouraged to invest in

THCR shares as the price fell from $30/share to $2/share.

42.     Beginning in 2003, THCR began to seek significant new investors in connection

with possible recapitalization. On August 9, 2004, THCR announced that it had negotiated a

recapitalization plan with DLJ Merchant Bank ("DLJ") and others that would convert a

13

significant portion of existing debt to equity (the "DLJ Recap Plan"). The DLJ Recap Plan required the Company to enter into a pre-arranged bankruptcy. The recapitalization would reduce Chairman Donald Trump's stake in the Company from 56% to 25% of existing equity.

43.     On August 10, 2004, the New York Stock Exchange delisted THCR common stock, finding that in light of the proposed recapitalization and bankruptcy, THCR no longer met listing standards. THCR stock continued to trade over the counter, but the price per share fell from $1.85/share on August 9 to close at $.36/share on August 10.

44.     The Committee charged with monitoring the Plan's investments had made no effort to sell shares either before or during this 80% price drop. Accordingly, plaintiffs and other Plan participants bore the full amount of this loss.

45.     On August 14, 2004, the Plan, authorized by the Committee, announced that Plan participants could no longer make additional purchases of THCR common stock. This prevented Plan participants from using an "averaging down" strategy of buying additional shares at the current much lower price, to recoup some of their losses. Plan participants were permitted to sell shares in this period; however, sales at a price below $.50/share seemed uneconomical, in light of the published ten cents per share sales commission. Plan participants were not informed that the commission on sales might be waived.

46.     Negotiations with DLJ were terminated on September 22, 2004. On that date, THCR announced that it was pursuing with its noteholders alternatives with respect to a potential restructuring of debt securities of the Company's subsidiaries and a recapitalization of THCR.

47.     On October 20, 2004, THCR announced that it had entered into a new Restructuring Support Agreement with its principal Noteholders and with its largest shareholder,

14

Donald J. Trump (the "Noteholders Proposal"). This Proposal, like the DLJ Recap Plan, contemplated a bankruptcy filing by THCR. The Noteholders Proposal also contemplated a significant dilution of the interests of Donald J. Trump and the minority shareholders, and provided that the minority shareholders would be issued warrants permitting them to purchase additional shares at a set price. In an October 22, 2004 Memorandum to all Trump Casino Resorts employees, entitled "Great News!" Mark A. Brown, President of Casino Operations, told employees, "The news we have been waiting for has arrived, and the outcome could not be better."

48.     The announcements of the Noteholders Proposal caused a small increase in the price of THCR common stock, to above $1/share for a few days, but the stock remained well below its August, 2004 price level.

49.     On October 28, 2004, THCR announced that in connection with the Noteholders Proposal Scott C. Butera had been appointed as Chief Operating Officer, and that Mark A. Brown would remain President and Chief Executive Officer of the casino operations group. On that date, the stock closed at $.80/share. Donald J. Trump remained the Chairman of the Board of Directors.

50.     Also on October 28, the Plan, authorized by the Committee, sent a letter to all Plan participants stating that all THCR shares in the Plan would be sold between November 15 and November 17. There was no opportunity to opt-out of the sale, although the letter stated that individual participants purportedly would be permitted to sell their own shares on any date before November 15. There was no suggestion in the letter that the ten cents per share commission would be waived.

15

51.     The Plan had held over 1.2 million shares of THCR common stock as of
December 31, 2003, an amount greater than the trading volume of the stock on many trading
days. Announcing a planned sale of a huge block of stock in a letter to thousands of employees
meant that market participants would learn of the forced sale, and adjust their trading strategies
to take advantage of the anticipated increase in supply of THCR shares. This would have the
unfortunate effect of depressing the stock immediately before the sale of Plan stock.

52.     In fact, Plan participants were not permitted to sell their shares on all of the days
preceding the planned forced sale. The Plan Trustee refused to accept sell orders after November
10, 2004. Thus, Plan participants could not avoid the detrimental effect on the price of THCR's
stock of anticipated substantial sale.

53.     THCR common stock declined significantly between October 28, when the sale of
Plan stock was announced, to November 17, when the sale was completed. Although THCR
announced some positive steps towards implementing the recapitalization plan, the forced
liquidation resulted in proceeds of the Class of only $.58/share, 27% less than the $.80/share
closing price only two weeks earlier when the planned sale had been announced.

54.     In connection with the Noteholders' Proposal, on Sunday, November 21, THCR
and several of its subsidiaries filed for bankruptcy in the District of New Jersey. On November
22, THCR announced that service and operations would not be affected by the reorganization,
and that it had arranged for interim financing from Beal Bank, as had previously been announced.

55.     The bankruptcy filing and related developments caused the price of THCR
common stock to rise almost immediately. By December 6, only three weeks after all of the
shares in the Plan had been sold for $.58/share, the stock closed at $2.04/share, an astounding

16

250% increase from the price received by the Plan. The stock price has remained close to $2/share since that date. The closing price on January 31, 2005 was $1.93/share.

56.     In this time period, Defendants and other executive officers of THCR and the Trump Companies did not sell their own personal shares of THCR stock, thereby avoiding the loss suffered by Plaintiffs and the Class.

57.     Plaintiffs and other Plan members did not authorize the sale of their shares in the November 15-17 period, and would not have authorized such sales had authorization been requested.

58.     Plaintiffs and other Plan participants have lost millions of dollars from their retirement accounts because the Committee ordered the sale of shares at an inappropriate time and in an inappropriate manner.

59.     Subsequent to November 17, Defendant Fisher's refusal to identify the members of the Committee responsible for ordering the sale of shares despite repeated requests is further evidence of breach of fiduciary duties.

## IX. THE DOE DEFENDANTS BREACHED THEIR FIDUCIARY DUTIES

60.     **Fiduciary Status.** During the Class Period, THCR Board of Directors appointed certain entities and individuals to serve as Plan fiduciaries and exercise discretionary authority and control over the administration of the Plan, and thereby acted as a fiduciary of the Plan. Any individuals or committees named by the Board of Directors to oversee the Plan would automatically become ERISA fiduciaries pursuant to ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1). The identity of these entities and individuals is not publicly available information, and may have changed during the Class Period.

17

61.  **Scope of Fiduciary Responsibility.**  While it is impossible to determine solely

from the publicly available documents the manner in which the any Board designee operated, the

Plan Documents gave any such designees broad responsibility for all aspects of the management

and administration of the Plan.  Under the terms of the Plan, the Doe Defendants on the

Committee have "complete control of administering the Plan."  Plan Document § 13.3.

62.  **Fiduciary Breaches.**  Given the apparently plenary scope of its authority, the

Defendants breached their fiduciary duties to the Plan and their participants/beneficiaries in the

same ways and to the same extent as did THCR.  Thus, the Defendants breached their duties in

several ways:

- by preventing Plan participants from purchasing additional THCR shares after August 14, 2004, when the price was suddenly, temporarily depressed by the announcement of the DLJ Recap Plan;

- by ordering the sale of all of the Plan's THCR shares between November 15 and 17 at a time when the Company's stock was temporarily depressed by the recent delisting, the withdrawal of the DLJ Recap Plan, and the uncertainty associated with the Noteholders' Proposal;

- by managing the sale of shares in a manner that minimized the proceeds to participants.  The warning that a large sale of shares would occur two weeks in the future could be expected, and did, to depress the price of the stock on the days when sales were planned as other market participants adjusted their investing strategies to profit from the sale;  and

- for Defendant Fisher, by refusing to disclose the names of committee members despite repeated requests.

63.  The Doe Defendants are liable as co-fiduciaries of the other Defendants because

they participated in the acts or omissions of the other Defendants knowing such acts or omissions

were breaches of fiduciary duty; because their failure to comply with ERISA § 404(a)(1) enabled

the other Defendants to commit a breach; and because they had knowledge of breaches by the

18

other Defendants and failed to make reasonable efforts under the circumstances to remedy said
breaches.

## XI. THE DEFENDANTS' BREACHES OF FIDUCIARY DUTY CAUSED LOSSES

64.     The Plaintiffs, and the participants and beneficiaries of the Class suffered losses,
because substantial assets in the Plan were divested of THCR shares by action authorized by
Defendants in violation of Defendants' fiduciary duties. If Defendants had fulfilled their
fiduciary duties, Plan losses could have been averted by permitting Plan participants to continue
holding shares.

65.     Participants in the Plan did not exercise actual control of the Plan's assets at the
time of the sale of shares, as they had no role in the decision to sell shares. Defendants remained
entirely responsible for losses associated with such investments.

66.     Participants in the Plan suffered millions of dollars in losses because substantial
assets lost their value as a result of the Defendants' fiduciary breaches. The loss occurred
because all shares of THCR common stock in the Plan were sold at 57 cents per share. This loss
was reflected in the greatly diminished account balances of the Plan's participants.

67.     Defendants are responsible for losses caused by participant direction of
investment in the THCR stock because the Defendants failed to take the necessary and required
steps to ensure effective and informed independent participant control over the investment
decision-making process, as required by ERISA § 404(c), 29 U.S.C. § 1104(c), and the
regulations promulgated thereunder. Defendants, not Participants, ordered that the shares be sold
November 15 through 17. As a consequence, participants did not exercise control over their
investments in the THCR stock, and Defendants remain liable under ERISA for losses caused by

19

such investment.

68.    Had the Defendants properly discharged their fiduciary and/or co-fiduciary duties, the Plan would have avoided a substantial portion of the losses that it suffered from the sudden sale of THCR common stock.

## XII. CLASS ACTION ALLEGATIONS

69.    Plaintiffs bring this action as a class action pursuant to Rules 23(a), (b)(1), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the following class of persons similarly situated (the "Class"). The proposed definition of the Class is:

> All persons who were or are participants in, or beneficiaries of, The Trump Capital Accumulation Plan, and held shares of Employer stock as of October 28, 2004. Excluded from the Class are the Defendants.

70.    The Class stated above defines a group of people, the participants and beneficiaries of the Plan during that period. It does not limit or purport to limit the period during which the fiduciary breaches took place and the Plan suffered losses. Even after the close of the Class Period some of the breaches alleged above continued to take place and losses to the Plan continued to mount.

71.    The exact number of Class members is known only to the Defendants and their agents. On information and belief, the Class numbers in the thousands, is geographically dispersed across the United States, and thus is so numerous that joinder is impracticable. The number of Class members can readily be determined by appropriate discovery. According to the Company's Form 5500 filed with the Department of Labor for the fiscal year ending December 31, 2003 ("2003 Form 5500"), the Plan had 5749 participants with account balances at the end of 2003.

20

72.    The members of the Class are so numerous that joinder of all members is

impracticable.

73.    Common questions of law and fact exist as to all members of the Class and

predominate over any questions affecting solely individual members of the Class.  Among the

questions of law and fact common to the Class are:

- whether Defendants violated ERISA, as alleged herein;

- whether and to what extent Defendants were fiduciaries;

- whether and to what extent Defendants owed fiduciary duties to the Plan
  and participants;

- whether Defendants breached fiduciary duties owed to the Plan and
  participants by failing to act prudently and solely in the interest of the Plan
  and their participants and beneficiaries; and

- whether the Plan, Plaintiffs and the members of the Class have sustained
  injury by reasons of Defendants' actions and omissions and, if so, what is
  the appropriate measure of damages.

81.    Plaintiffs' claims are typical of the claims of the members of the Class because the

Plaintiffs and the other members of the Class each sustained damages arising out of the

Defendants' wrongful conduct in violation of federal law as complained of herein.

82.    Plaintiffs will fairly and adequately protect the interests of the Class. They have

no interests that are antagonistic to or in conflict with the interests of the Class as a whole, and

they have engaged competent counsel experienced in ERISA class actions concerning employer

securities, as well as in other class and complex litigation, to ensure protection of the interests of

the Class as a whole.

83.    This action is maintainable as a class action under each of the following

provisions of Rule 23(b):

- **Rule 23(b)(1)(A).** The prosecution of separate actions by the members of the Class would  create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for Defendants.

- **Rule 23(b)(1)(B).** As an ERISA breach of fiduciary duty action for plan-wide relief, this is a class Rule 23(b)(1)(B) class action. The prosecution of separate actions by the members of the Class would create a risk of adjudications with respect to individual members of the Class that would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

- **Rule 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## XIII. REMEDY FOR BREACHES OF FIDUCIARY DUTY

84.     The defendant fiduciaries breached their fiduciary duties in that they knew or should have known the facts as alleged above, and therefore knew or should have known that the Plan's THCR should not have been sold at the time, and in the manner, that they were sold.

85.     As a direct consequence of the Defendants' breaches, Plan participants and beneficiaries suffered significant losses in their retirement accounts.

86.     With respect to calculation of the losses to a plan, breaches of fiduciary duty result in a  presumption that, but for the breaches of fiduciary duty, the participants and beneficiaries in the plan would not have made the divestment of shares and would instead have held their THCR shares at least until December, 2004. In this way, the remedy restores the values of the Plan's assets to what they would have been if the Plan had been properly administered.

87.     Plaintiff and the Class are therefore entitled to relief from the Defendants in the form  of: (1) a monetary payment to the Plan to make good to the Plan the losses to the Plan

22

resulting from the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as provided by ERISA § 409(a), 29 U.S.C. § 1109(a); (2) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a)(2-3), 29 U.S.C. §§ 1109(a) and 1132(a)(2-3); (3) reasonable attorney fees and expenses, as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (4) taxable costs and (5) interests on these amounts, as provided by law; and (6) such other legal or equitable relief as may be just and proper.

## COUNT I: BREACH OF FIDUCIARY DUTY

88.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if set forth fully herein.

89.     The Defendants breached their fiduciary duty to the Plan and their participants and beneficiaries. They are liable under ERISA § 502(a)(2) to make the Plan whole for their attendant losses. They are also liable as co-fiduciaries under ERISA. § 405, 29 U.S.C. § 1105.

## COUNT II: ADDITIONAL THEORY OF LIABILITY

90.     Plaintiffs incorporate the allegations contained in the previous paragraphs of this Complaint as if set forth fully herein.

91.     If, contrary to Plaintiffs' allegations above, some of the Defendants are held not to be Plan fiduciaries, Plaintiffs allege in the alternative that said Defendants are liable as non-fiduciaries who knowingly participated in the fiduciary breaches of the other Plan fiduciaries described herein, for which said Defendants are liable pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

23

**WHEREFORE**, Plaintiffs demand judgment against the Defendants and request the

following relief:

A.    issuance of an Order certifying this action as a class action under Fed. R. Civ. P. 23(a), (b)(1) and (b)(2);

B.    that this Court declare that the Defendants breached their ERISA fiduciary duties to Plan participants and beneficiaries;

C.    that this Court declare that the Defendants are not entitled to the protection of ERISA § 404(c)(1)(B), 29 U.S.C. § 1104(c)(1)(B);

D.    actual damages in the amount of any losses the Plan suffered, to be allocated among the Participants' individual accounts in proportion to the accounts' losses;

E.    issuance of an Order directing the Defendants to allocate the Plan's recoveries to the accounts of all participants who had THCR shares as of October 28, 2004 maintained by the Plan in proportion to the accounts' losses attributable to the divestment of THCR shares.

F.    issuance of an Order that Defendants make good to the Plan their losses as a result of their breaches of their fiduciary duties, including losses to the Plan resulting from imprudent divestment of THCR shares, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations;

G.    imposition of a Constructive Trust on any amounts by which any defendant was unjustly enriched at the expense of the Plan as the result of breaches of fiduciary duty;

H.    issuance of an Order enjoining Defendants from any further violations of their ERISA fiduciary obligations;

I.    that this Court order declaratory and injunctive relief as necessary and appropriate, including restoring all losses to the Plan caused the Defendants' breaches of fiduciary duty;

J.    that this Court order that each of the Defendants is liable for equitable relief in the form of money paid to the Plan and their participants and beneficiaries for violating their duties as fiduciaries and co-fiduciaries;

24

K.      that this Court award to Plaintiffs reasonable costs and attorneys' fees as provided by the common fund doctrine, ERISA § 502(g), 29 U.S.C. § 1132(g), and other applicable law; and

L.      that this Court grant such other relief as may be just and proper, including taxable costs and interest, as provided by law.

## JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury on all issues so triable.

Dated: February 7, 2005            Respectfully submitted,

                                   **FOX ROTHSCHILD LLP**

                                   Eric M. Wood
                                   Midtown Building
                                   1301 Atlantic Avenue, Suite 400
                                   Atlantic City, NJ 08401-7212
                                   (609) 572-2227
                                   (609) 348-6834 (Fax)
                                   *Liaison Counsel for Plaintiffs*

                                   **BERGER & MONTAGUE, P.C.**

                                   Sherrie R. Savett
                                   Arthur Stock
                                   1622 Locust Street
                                   Philadelphia, PA 19103
                                   (215) 875-3000
                                   (215) 875-5715 (Fax)

                                   *Counsel for Plaintiffs*